IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| KATHERINE MERHULIK f.k.a.<br>KATHERINE LEEDS<br>855 East 245th Street<br>Euclid, Ohio 44119<br><br>　　　　Plaintiff,<br><br>vs.<br><br>WELTMAN, WEINBERG, & REIS CO.,<br>LPA<br>323 West Lakeside Ave #200<br>Cleveland, Ohio 44113<br><br>　　　　Defendant. | CASE NO.<br><br>JUDGE<br><br><br>**COMPLAINT**<br><br>**(Count One: Disparate Treatment Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621, *et seq.*; Count Two: Unlawful Use of Hiring Criteria in Violation of the ADEA, 29 U.S.C. § 621, *et seq.*; Count Three: Unlawful Retaliation in Violation of the ADEA, 29 U.S.C. § 623(d); Count Four: Unlawful Retaliation in Violation of Title VII, 42 U.S. Code § 2000e–3(a); Count Five: Age Discrimination, R.C. §§4112.02, *et seq.* and §4112.99; Count Six: Age Discrimination (Disparate Impact), R.C. §§4112.02, *et seq.* and §4112.99; and Count Seven: Retaliation, R.C. §§4112.02 (I) and §4112.99**<br><br>**(*JURY DEMAND ENDORSED HEREIN*)** |

For her Complaint against Defendant, Weltman, Weinberg, & Reis Co., LPA, Plaintiff, Katherine Merhulik f.k.a. Katherine Leeds, by and through undersigned counsel, states as follows:

**JURISDICTION AND VENUE**

1.　　The Court has subject jurisdiction pursuant to the following statutes:

　　　　a.　28 U.S.C.§1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States.

   b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government; and

   c. 28 U.S.C. § 1367 which gives the district court supplemental jurisdiction over state law claims.

  2. Because this case is brought under the ADEA, 29 U.S.C. § 621, *et seq*., this Court has federal question jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(4).

  2. This Court has personal jurisdiction over Defendant because it has its principal place of business in this judicial district.

  3. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c) because (1) Defendant is subject to personal jurisdiction in this judicial district and, thus, qualifies as a resident under 28 U.S.C. §1391(c) (2); and (2) all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district.

  4. Plaintiff's job applications forming the basis for the claims asserted herein were made in the Northern District of Ohio, and the jobs with Defendant that Plaintiff applied for were based in the Northern District of Ohio.

### THE PARTIES

  4. Plaintiff, Katherine Merhulik f.k.a. Katherine Leeds, is over the age of sixty (60) years of age and is and was at all times relevant to the claims asserted herein a resident of the City of Euclid, County of Cuyahoga, and State of Ohio.

  5. Defendant, Weltman, Weinberg, & Reis Co., LPA, is an Ohio Legal Professional Association with a principal place of business located in the City of Cleveland, County of Cuyahoga, and State of Ohio, which employs more than four (4) individuals.

  6. Defendant has offices in Ohio, Pennsylvania, Illinois, and Michigan. Defendant's

Ohio offices are located in the cities of Cleveland in Cuyahoga County and Cincinnati in Hamilton County.

## STATEMENT OF FACTS

7.      Plaintiff restates the allegations in paragraphs 1 through 6 as if fully rewritten herein.

8.      On or about July 13, 2009, Plaintiff began employment with Defendant as a Legal Collector and was promoted due to work excellence to Quality Assurance Telephone Monitor on or about November 24, 2012.

9.      As a Quality Assurance Telephone Monitor, Plaintiff monitored and scored collectors' calls for quality, generated reports for the employer and clients, met with clients and management to review and calibrate calls and procedures, was responsible for writing procedural documents and training manuals, and would assist in training new hires.

10.     On or about July 30, 2016, Defendant internally changed the title of Quality Assurance Telephone Monitor to Quality Assurance Specialist. This change did not affect any of Plaintiff's duties, as it was a title change only.

11.     On or about April 16, 2016, Plaintiff was given an hourly raise in pay by Defendant.

12.     In the seven (7) years that Plaintiff was employed by Defendant, she was an exemplary employee with an excellent attendance record, work ethic, and desire to overachieve that allowed her to receive multiple awards throughout her course of employment.

13.     Plaintiff completed extensive coursework consisting of over 200 courses in her area of work and constantly strove to improve herself as an employee for Defendant's benefit.

14.     Plaintiff was named "employee of the month" by Defendant for which she was given a free parking spot, and was given a "way to go" award for excellent customer service in

having prompt turnaround on deliverables, among other accolades.

15.     At all times relevant to the claims asserted herein, Plaintiff was a member of a protected class based on her age.

16.     On September 1, 2016, at the age of fifty-nine (59), Plaintiff was informed by Defendant that her position was being downsized and that her employment was to be terminated due to a reduction in force ("RIF") implemented by Defendant.

17.     Plaintiff was terminated in addition to twenty-two (22) other employees of Defendant.

18.     Plaintiff's job duties were distributed to the remaining employees in her department, who were ages 44, 49, and 50, respectively.

19.     Subsequent lesser collector positions that Plaintiff was qualified for were offered by Weltman to other employees outside of the protected class instead of termination.

20.     The RIF process involved supervisors reviewing "scorecards" which listed—among other things—name, age, and performance information of each employee in an individual department.

21.     Information regarding age on the utilized scorecards is not relevant to the employment decision.

22.     No disciplinary action taken over a year from the date of the scorecard was considered by Defendant in determining which employees would be terminated as part of a RIF.

23.     The performance information provided on the scorecards was arbitrary and unhelpful, at best, in evaluating employee performance.

24.     The RIF process engaged in by Defendant also involved a "rank and yank" system, which utilized the scorecards to rank employees in departments against each other and then

Defendant purportedly terminated those employees having the "lowest" scores.

25.     However, these rankings were done for purposes of the RIFs to obtain the results Weltman wanted in its mass terminations (the "yank"), not for purposes of legitimate employee evaluation in order to improve its workforce.

26.     Defendant had, prior to and during the course of Plaintiff's employment, terminated between 20 and 100 employees multiple times.

27.     These terminations have resulted in the termination of a disproportionate number of individuals over the age of 40.

28.     In utilizing scorecards, a large majority of the Defendants' employees terminated during the RIF were over the age of 40, and their job duties were distributed to employees substantially younger than Plaintiff and/or below the age of 40.  In fact, 16 of the 23 terminated employees, including Plaintiff, were over the age of 40.

29.     Prior to the "scorecard" system for RIFs, Defendant utilized lists or reports containing the same information, including, without limitation, sex, age, gender, name and position.

30.     Pursuant to Defendant's "scorecard" system, older workers were routinely terminated regardless of performance as part of RIFs.

31.     On February 27, 2017, Plaintiff filed a lawsuit against Defendant in the Cuyahoga County Court of Common Pleas, *Leeds v. Weltman, Weinberg & Reis Co., L.P.A.*, Cuyahoga County Case No. CV 17 876521(the "Initial State Court Action"), wherein Plaintiff asserted claims of age discrimination and wrongful termination in violation of Ohio Public Policy, which was amended on April 17, 2017.

32.     According to the report of Plaintiff's expert in the Initial State Court Action

5

("Plaintiff's Expert Report"), using a Chi-Square statistical analysis for the years 2013, 2014, 2015, and 2016, the termination rates for those age 40 and over were higher than the rates for those under 40 and the discrepancies cannot plausibly be attributed to chance. Thus, the analyses for the years 2013, 2014, 2015, 2016 suggested age was a factor in the decision to terminate.  Plaintiff's Expert Report is not filed herewith, as it is protected from disclosure by the parties' *Agreed Protective Order Regarding Confidential Material* filed in the Initial State Court Action.

33.     In looking at the combined data for all terminations by Defendant from 2008-2016, age must have been a factor in Plaintiff's termination.  Specifically, 187 out of 276 employees age 40 and over (67.8%) and 152 out of 350 employees under the age of 40 (43.4%) were terminated, which is statistically significant and suggested that age was a factor in Defendant's decision to terminate Plaintiff.

34.     Defendant's workforce reduction practices or process of using scorecards with age of employees stated had a demonstrable effect of discriminating against employees on the basis of age.

35.     For at least seven (7) years, Defendant engaged in a specific, neutral practice of using scorecards together with reductions in force ("RIFs"), which excluded Plaintiff from employment based on her age.

36.     The specific, neutral practice of using scorecards together with RIFs was not based on any reasonable factor other than age.

37.     Plaintiff was qualified at all relevant times for the position she lost during the RIF implemented by Defendant.

38.     Plaintiff's performance reviews in all of her positions with Defendant consistently reflected that she met the job expectations for the position.

39.     Subsequent lesser collector positions that Plaintiff was qualified for were offered by Defendant to other employees outside of the protected class instead of termination.

40.     The Collections Specialist position is one that Plaintiff had excelled in for five (5) years at the beginning of her career.

41.     Plaintiff was not considered for a different position, not offered a different position, and not permitted to return to her work station to collect her things.

42.     On or about October 18, 2018, the Initial State Court Action was dismissed without prejudice due to a death in the family of one of Plaintiff's trial counsel and the unwillingness of the state trial court to continue the trial date.

43.     On October 9, 2019, Plaintiff refiled her claims against Defendant in the Cuyahoga County Court of Common Pleas in the case styled, *Leeds v. Weltman, Weinberg & Reis Co., L.P.A.*, Cuyahoga County Case No. CV 19-922944 (the "Current State Court Litigation"), which remains pending.

44.     Plaintiff has applied for other jobs since her termination, including two jobs with Defendant for which she was qualified or overly qualified and was not hired, and continues to seek new employment.

45.     During the Initial State Court Action, Defendant's counsel encouraged Plaintiff to apply for open positions with Defendant.

46.     In January, 2018, Defendant posted a job opening for the position of "Collections Specialist" (job requisition number 2547) (the "First Job Posting").

47.     Taking Defendant's counsel's suggestion to heart, Plaintiff electronically submitted a complete application to Defendant for the First Job Posting.

48.     Despite being more than qualified for the Collections Specialist position, Plaintiff

was not asked by Defendant to interview for the First Job Posting and was not contacted by Defendant regarding the First Job Posting (job requisition number 2547).

49.     Instead, Defendant promptly cancelled the First Job Posting.

50.     Also in January, 2018, Defendant posted a second job opening for "Collections Specialist" (job requisition number 2569) (the "Second Job Posting")

51.     Plaintiff submitted a complete application to Defendant for the Second Job Posting on or about January 22 2018, and received an email confirmation of her submission.

52.     Despite being more than qualified for the Collections Specialist position, Plaintiff was not asked to interview for the Second Job Posting by Defendant and was not contacted by Defendant regarding her application for the Second Job Positing (job requisition number 2569), despite Plaintiff's more than 30 years of relevant business experience, dating back to the 1970's, including 7 years of prior employment with Defendant, and Plaintiff's intimate knowledge of Defendant's collection department and internal policies and procedures for the position.

53.     Based on a Google search with numerous collector positions available, including "Legal Collection Specialist" and "Collection Specialist," there are currently more than five postings for collections specialists with Defendant.

54.     Some of these job postings are worded to intentionally seek out younger applicants. The first thing the applicant reads is "are you looking to start your career in the Legal field."

55.     During the current pandemic, Ms. Leeds is in the high risk category and unable to actually seek work.  She is currently employed taking surveys online, which in return provides various gift cards to maintain her computer skills.

56.     At all times relevant to the claims herein, Defendant failed to train employment decision makers on how to avoid an adverse impact on workers over the age of 40 in implementing

an employment practice or decision, including the hiring of Collections Specialists.

57.     Defendant failed to perform any statistical analysis when using or implementing employment practices and decisions, including the hiring of Collections Specialists.

58.     Defendant's practice of hiring without regard to the impact on workers over the age of 40 was a common business practice of Defendant at all times relevant herein.

59.     Other options were available to Defendant for the hiring of personnel, including Collections Specialists, that would not have an adverse effect on older workers.

60.     At all times relevant to the claims asserted herein, Defendant failed to provide anti-discrimination training to hiring managers.

61.     Defendant failed to take reasonable steps under the circumstances to assess the disparate impact on job applicants over the age of 40 of its interview and hiring decisions for the First Job Posting and Second Job Posting.

62.     At all times relevant to the claims asserted herein, Defendant made no attempts to minimize subjectivity in its hiring managers' decision-making, including for the "Collections Specialist" position.

63.     In its advertising for the Collections Specialist position, Defendant has consistently presented the position as one best suited for younger workers by stating: "Are you looking to start your career in the legal field ***?"

64.     Plaintiff was "more than qualified" for the First Job Posting and Second Job Posting, and Plaintiff used due diligence in making every reasonable effort to find employment comparable to that she had with Defendant after the September, 2016, layoff.

65.     Upon information and belief, Defendant hired several other job candidates for the Second Job Posting who were not in the protected age class and were less qualified for the position

than Plaintiff.

66. Defendant failed to provide the applicants for the Second Job Posting to the EEOC during its investigation and stated to the EEOC that it hired a more qualified candidate, and as of this filing, Defendant has at least five Collections Specialist positions open.

## ADEA COVERAGE

67. When Defendant advertised on its website for applicants for the First Job Posting and the Second Job Posting, Defendant was an "employer" as defined by §11(b) of the Age Discrimination in Employment Act, as amended [29 U.S.C. §630(b)] ("ADEA").

68. At all relevant times, Plaintiff was over 40 years of age [29 U.S.C. § 631(a)] and Defendant denied her employment despite her being the most qualified candidate [29 U.S.C. § 623(a) (1), (2)].

## NOTICE OF RIGHT TO SUE

69. On October 23, 2018, Plaintiff filed a charge with the Cleveland Field Office of the Equal Employment Opportunity Commission, Charge No. 532-2019-00136C (the "EEOC Charge"), against Defendant alleging age discrimination and retaliation in connection with the First Job Posting and Second Job Posting.  The EEOC Charge was cross-filed with the Ohio Civil Rights Commission ("OCRC").  All allegations contained in the EEOC Charge are hereby incorporated herein by reference.

70. Plaintiff made the following allegations in the EEOC Charge:

I worked for the above-named respondent until I was laid off in September 2016. I filed suit against the company for age discrimination in violation of the law. While the suit was pending, I applied for an open position as a debt collector on January 22, 2018.

I was not interviewed for the open position and I have thirty years experience some of which I got while working for respondent. I believe respondent hired less qualified and younger candidates than me.

> I believe I have been discriminated against due to my age (61) in violation of the Age Discrimination in Employment Act of 1967, as amended ADEA. and in retaliation for exercising my legal rights under ORC 4112. et. seq.

A true and correct copy of the EEOC Charge has been filed herewith as Exhibit A.

71.     On January 10, 2020, Defendant submitted its position statement in response to the EEOC Charge, which did not include the names, qualifications, applications or resumes of any of the other applicants for the First Job Posting and the Second Job Posting.

72.     Plaintiff was provided no evidence from the EEOC file and on March 4, 2020, the EEOC closed its charge file and issued to Plaintiff a right to sue letter.  A true and correct copy of the March 4, 2020, Dismissal and Notice of Rights from the EEOC is filed herewith and incorporated herein by reference as Exhibit B.

## COUNT ONE

**Unlawful Intentional Age Discrimination (Disparate Treatment) in Violation of the ADEA, 29 U.S.C. § 621, *et seq*.**

73.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

74.     Plaintiff filed a timely charge of age discrimination with the EEOC, and has satisfied all preconditions to bringing this action. Plaintiff has exhausted her administrative remedies.  Plaintiff timely files this suit following notice of her right to sue.

75.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. § 630.  At all relevant times, Defendant has been engaged in interstate commerce within the meaning of the ADEA and has employed, and continues to employ, twenty or more employees.

76.     The ADEA makes it unlawful for employers and their agents "to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a) (1).

77.     Plaintiff was 61 years old at the time she applied for the First Job Positing and Second Job Posting with Defendant.

78.     Plaintiff was qualified by her over 30 years of business experience, many as a collector and in quality assurance, including her past employment with Defendant in the positions of Legal Collector and Quality Assurance Telephone Monitor / Quality Assurance Specialist.

79.     Upon information and belief, at least 2 substantially younger individuals who were below 40 years of age and were less qualified than Plaintiff were hired for the Second Job Posting.

80.     Defendant's refusal to consider Applicant's superior qualifications due to her age was a way of intentionally weeding out older applicants like Plaintiff.  Upon information and belief, Defendant believed that older workers were not desirable, qualified candidates because of stereotypes and unfounded assumptions regarding older workers' commitment and their unwillingness to be managed by younger, less-experienced supervisors. Age-based stereotypes deprive qualified older workers of job opportunities.

81.     Defendant's violations of the ADEA were intentional and willful.

82.     As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained economic and non-economic damages, including, but not limited to, reasonable attorney fees, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization.

## COUNT TWO

**Unlawful Use of Hiring Criteria Having Disparate Impact
on Applicants Over 40 Years of Age in Violation of the ADEA, 29 U.S.C. § 621 et seq.**

83.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

84.     As confirmed by the U.S. Supreme Court in *Smith v. City of Jackson*, 544 U.S. 228 (2005) and *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008), the ADEA prohibits employers from utilizing facially age-neutral policies that have a significant adverse disparate impact on qualified workers over the age of 40, such as Plaintiff, unless the employer can prove that disparate impact caused by the challenged policies and practices was premised on a "reasonable factor other than age."

85.     On information and belief, Defendant's use of age as a factor in making employment decisions had a significant adverse disparate impact on Plaintiff and other qualified applicants for employment with Defendant over the age of 40 in violation of the ADEA. The consideration of age by Defendant excluded Plaintiff and other similarly situated, qualified older workers over the age of 40 with superior job experience from consideration for the "Collections Specialist" position without any reasonable basis for such a categorical exclusion and without individualized review of Plaintiff's extensive and excellent qualifications.

86.     While the Plaintiff cannot provide the exact statistical impact without the benefit of discovery, the likelihood of a person over 40, and particularly one over the age of 60 like Plaintiff, being selected for the available position given Defendant's consideration of age as a factor in making employment decisions, would be substantially less than that of a person under age 40.

87.     By using age as a factor in screening and considering applicants for employment as, and on applicants for the "Collections Specialist" and other positions, such as those currently

being advertised today, Defendant discriminated against qualified applicants over the age of 40 in contravention of the prohibitions on age discrimination set forth in the ADEA.

88.     As a direct and proximate result of the foregoing violations of the ADEA by Defendant, Plaintiff has sustained injury, including, but not limited to: denial of the wages and other benefits provided to Collections Specialists employed by Defendant, lost interest on those wages and other benefits, reasonable attorney fees and loss of any potential opportunity to advance within Defendant's organization, which is still operating as seen by the March 25, 2020, Cleveland Plain Dealer article, "*Coronavirus Can't Stop Cleveland Debt Collectors, Lawmakers Might*," attached hereto and incorporated herein as Exhibit C.

## COUNT THREE

### Unlawful Retaliation in Violation of the ADEA,
### 29 U.S.C. § 623(d)

89.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

90.     Under the ADEA, a person has engaged in "protected activity" when she "has opposed any practice made unlawful by…section [623]" of the Act (29 U.S.C. § 623(d)).

91.     Section 623 of the Act makes it unlawful to discriminate "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such an individual's age." (29 U.S.C. § 623(a)).

92.     Plaintiff engaged in protected conduct by filing the Initial State Court Action for Defendant's discriminatory conduct on the basis of age (the "Protected Activity").

93.     Defendant knew of the Protected Activity because Plaintiff's Complaint in the Initial State Court Action was served upon Defendant, Defendant answered the Complaint and was

a participant in its defense of Plaintiff's claims and in discovery at the time of Plaintiff's applications for the Collections Specialist position in response to the First Job Posting and the Second Job Posting in January, 2018.

94.     Plaintiff was subject to an adverse employment action subsequent to engaging in the Protected Activity when Defendant failed to interview Plaintiff and consider her excellent credentials for the "Collections Specialist" position(s) described in the First Job Posting and Second Job Posting.

95.     A causal link exists between the Protected Activity and the adverse action because Defendant did not interview or consider Plaintiff's excellent credentials for the "Collections Specialist" position(s) described in the First Job Posting and Second Job Posting because of the Protected Activity.

96.     Defendant's violation of the ADEA by unlawful retaliation was willful and Plaintiff is entitled to compensatory and liquidated damages, including her reasonable attorney fees, for each violation pursuant to 29 U.S.C. § 216(b)) in amounts to be determined at trial.

## COUNT FOUR

**Unlawful Retaliation in Violation of Title VII, 42 U.S. Code § 2000e–3(a)**

97.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

98.     Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership,

because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (42 U.S. Code § 2000e–3(a)) (Emphasis added).

99.     Plaintiff opposed Defendant's unlawful employment practices of recruiting and hiring on the basis of age through the Protected Activity.

100.     Defendant took adverse action against Plaintiff because of the Protected Activity by failing to interview Plaintiff and consider her excellent credentials for the "Collections Specialist" position(s) described in the First Job Posting and Second Job Posting.

101.     There was a causal connection between the Protected Activity and the adverse employment action because the adverse employment action was taken because of the Protected Activity.

102.     Defendant's violation of Title VII's anti-retaliation provision was willful and malicious.

103.     Plaintiff has suffered damages in an amount to be established at trial as a direct and proximate result of Defendant's violation of Title VII's anti-retaliation provision.

## **COUNT FIVE**

### **Age Discrimination, Ohio Revised Code, §§4112.02 *et seq.* and §4112.99**

104.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

105.     Under Ohio Revised Code ("R.C.") §4112.02 (A), it "shall be an unlawful discriminatory practice" for any employer "to refuse to hire, or otherwise to discriminate against that person with respect to hire, ***or any matter directly or indirectly related to employment."

106.    The actions of Defendant, as described herein, were an "unlawful discriminatory practice" as described in R.C. §4112.02(C), *et seq.*

107.    Defendant's refusal to hire or even interview Plaintiff for the First Job Posting and Second Job Posting despite her superior qualifications on the basis of her age constitutes disparate treatment of Plaintiff in violation of Ohio Revised Code §§4112.02(C), *et seq.*

108.    Defendant acted with discriminatory motive in treating Plaintiff less favorably than job applicants substantially younger than Plaintiff whom were not part of the protected age class in determining not to hire or even interview Plaintiff for the First Job Posting and Second Job Posting despite her superior qualifications and excellent past job performance with Defendant and, thus, Defendant acted with malice in its disparate treatment of Plaintiff on the basis of her age.

109.    Statistical data creates an inference that Defendant discriminated against individual members of the protected age class, including Plaintiff, on the basis of age in making employment decisions.

110.    Defendant lacked a legitimate, non-discriminatory basis for refusing to hire or even interview Plaintiff for the First Job Posting and Second Job Posting.

111.    Any stated or articulated reasons given by Defendant for the disparate treatment of Plaintiff as a job applicant are false and mere pretext for age discrimination.

112.    The refusal to hire or even interview Plaintiff for the First Job Posting and Second Job Posting despite her superior qualifications on the basis of her age was not a legitimate, non-discriminatory or protected exercise of Defendant's business judgment regarding personnel decisions.

113.    Defendant by or through its authorized personnel and authorized agents, violated Ohio Revised Code §§4112.02, *et seq.* and is, therefore, subject to Ohio Revised Code §4112.99,

in that it shall be an unlawful discriminatory practice pursuant to Ohio Revised Code §4112.02 (A) to discriminate against Plaintiff on the basis of age.

114.    The actions of Defendant, as described herein, were an "unlawful discriminatory practice" as described in Ohio Revised Code §§4112.02(A), *et seq.*

115.    Defendant acted with discriminatory motive in treating Plaintiff less favorably than job applicants substantially younger than Plaintiff whom were not part of the protected age class in determining not to hire or even interview Plaintiff for the First Job Posting and Second Job Posting despite her superior qualifications and excellent past job performance with Defendant and, thus, Weltman acted with malice in its unlawful disparate treatment of Plaintiff.

116.    As a direct and proximate result of Defendant's unlawful and discriminatory actions as alleged herein, Plaintiff has suffered and will continue to suffer, among other things, lost employment opportunity, wages and benefits, entitling her to an award of compensatory damages in an amount to be determined at trial, plus Plaintiff's costs, punitive damages, reasonable attorney fees, and any other appropriate relief.

## COUNT SIX

**Age Discrimination (Disparate Impact), Ohio Revised Code, §§4112.02 *et seq.* and §4112.99**

117.    Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

118.    Defendant has a history and practice of using age as a determinative factor in employment decisions as a specific practice (the "Unlawful Practice").

119.    Upon information and belief, Defendant's Unlawful Practice was followed by the hiring of several younger applicants who were not in the protected class to fill the Second Job

Posting, despite those applicants having inferior qualifications and less relevant work experience than Plaintiff.

120.    Defendant's Unlawful Practice is in violation of Ohio Revised Code §§4112, *et seq*., including, without limitation, §4112.02 (A), as it historically has a disparate impact on the protected age class.

121.    It is not necessary that Defendant have a discriminatory intent for its Unlawful Practice to have an unlawful disparate impact on the protected age class in violation of §4112, et seq., including, without limitation, §4112.02 (A).

122.    Statistical data shows causation between Defendant's Unlawful Practice and the disparate impact on the protected age class.

123.    Plaintiff, at all times, was superiorly qualified for the "Collections Specialist" position with Defendant set forth in the First Job Posting and Second Job Posting, and could perform the job at a level that meets Defendant's legitimate employment and job expectations, as evidenced by her past job performance with Defendant.

124.    Defendant lacked a legitimate business justification for its refusing to hire or even interview Plaintiff for the First Job Posting and Second Job Posting under its Unlawful Practice.

125.    Any stated or articulated reason given by Defendant for its refusing to hire or even interview Plaintiff for the First Job Posting and Second Job Posting is false and a mere pretext for age discrimination.

126.    The actions of Defendant as alleged herein do not constitute a legitimate, non-discriminatory or protected exercise of Defendant's business judgment regarding personnel decisions.

127.     As a direct and proximate result of Defendant's Unlawful Practice, Plaintiff has suffered and will continue to suffer, among other things, lost employment opportunity, wages and benefits, entitling her to an award of compensatory damages in an amount to be determined at trial, plus Plaintiff's costs, punitive damages, reasonable attorney fees, and any other appropriate relief.

## COUNT SEVEN

### Retaliation, Ohio Revised Code, §§4112.02 (I) and §4112.99

128.     Plaintiff realleges and incorporates by reference all of the foregoing paragraphs as if fully rewritten.

129.     R.C. §4112.02 (I) makes it an unlawful discriminatory practice for Defendant "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

130.     Plaintiff engaged in a protected activity by filing the Initial State Court Action.

131.     Plaintiff's exercise of such protected activity was known by Defendant.

132.     Defendant took an action that was "materially adverse" to Plaintiff subsequent to engaging in the protected activity of filing a lawsuit when Defendant failed to interview Plaintiff and consider her excellent credentials for the "Collections Specialist" position(s) described in the First Job Posting and Second Job Posting.

133.     A causal connection existed between the protected activity and the materially adverse action because Defendant did not interview or consider Plaintiff's excellent credentials for the "Collections Specialist" position(s) described in the First Job Posting and Second Job Posting.

134.     Defendant lacked a legitimate, non-discriminatory basis for refusing to hire or even interview Plaintiff for the First Job Posting and Second Job Posting.

135.     Any stated or articulated reasons given by Defendant for its unlawful retaliatory conduct toward Plaintiff as a job applicant are false and mere pretext for age discrimination.

136.     The refusal to hire or even interview Plaintiff for the First Job Posting and Second Job Posting in retaliation for Plaintiff's engagement in the protected activity despite Plaintiff's superior qualifications on the basis of her age was not a legitimate, non-discriminatory or protected exercise of Defendant's business judgment regarding personnel decisions.

137.     As a direct and proximate result of Defendant's unlawful retaliation under R.C. §4112.02 (I) and R.C. §4112.99, Plaintiff has suffered and will continue to suffer, among other things, lost employment opportunity, wages and benefits, entitling her to an award of compensatory damages in an amount to be determined at trial, plus Plaintiff's costs, punitive damages, reasonable attorney fees, and any other appropriate relief.

WHEREFORE, Plaintiff, Katherine Leeds, demands judgment against Defendant, Weltman, Weinberg, & Reis Co., LPA, as follows:

A.     As to Count One, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

B.     As to Count Two, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

C.      As to Count Three, compensatory and liquidated damages for each violation pursuant to 29 U.S.C. § 216(b)) in amounts to be determined at trial;

D.      As to Count Four, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

E.      As to Count Five, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

F.      As to Count Six, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

G.      As to Count Seven, for a sum that will fully, fairly, and adequately compensate Plaintiff for her economic and non-economic damages, including, but not limited to, denial of the wages and other benefits, lost interest on those wages and other benefits, and loss of any potential opportunity to advance within Defendant's organization;

H.      As to all counts, punitive damages as permitted by law in an amount sufficient to punish and deter Defendant from such illegal discriminatory conduct in the future;

I.      As to all counts, Plaintiff's costs of this action;

J.      As to all counts, Plaintiff's reasonable attorney fees as permitted by applicable law;

K.    As to all counts, Plaintiff's prejudgment and post-judgment interest, as permitted by law; and

L.    As to all counts, such other and further legal and/or equitable relief to which Plaintiff may be entitled.

Respectfully Submitted,

GRUBB & ASSOCIATES, LPA.

/s/ Mark E. Owens
Natalie F. Grubb (0062596)
Mark E. Owens (0068335)
437 W. Lafayette Road, Suite 260-A
Medina, Ohio 44256
PH:   330-725-7252
FAX: 330-723-1095
E-MAIL: officemgr@grubbandassoc.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable that are raised in this matter.

/s/ Mark E. Owens
Mark E. Owens (0068335)